DENNIS, Judge.
This is an action for damages instituted by J. D. and Lillie Welborne for the wrongful death of their 2 year, 7 months old son, Jason Shane Welborne. The child died on June 19, 1971 as a result of injuries sustained when he was struck by a 1967 one-half ton Ford pickup truck driven by Mrs. Brenda Russell. Joined as defendants with Mrs. Russell were Lawrence Russell, her husband, and Southern Farm Bureau Insurance Company, the liability insurer of the truck driven by Mrs. Russell.
The lower court found Mrs. Russell free from actionable negligence and rendered judgment in favor of defendants. The plaintiffs appealed.
On the morning of June 19, 1971, Brenda Russell left her home near Oak Grove, Louisiana, en route to the automotive repair garage of J. D. Welborne to return some tools her husband had borrowed. The garage was situated at the rear or northern part of Mr. Welborne’s property and his residence was on the front, southern portion. There was a driveway running east and west in front of the garage and behind the residence. To the west of the garage was a welding shop operated by Mr. Lonnie Brown. The garage and welding shop shared a common wall and were under the same roof. Mrs. Russell pulled up in front of the garage and parked in the driveway facing in a westerly direction. She got out of the driver’s side and walked around the rear of the truck. She met Mr. Welborne just outside the door of his garage, handed him the tools, and talked with him briefly. Mr. Brown was in his welding shop and Mr. Barrett, a customer of Mr. Welborne, was in the Wel-borne garage having some maintenance *685 work done on his car. After the brief conversation, Mrs. Russell retraced her steps, got back in her truck and started in a westerly direction. She felt a hump but did not realize she had run over young Jason Shane until she discovered in the rear view mirror that his body was lying in the driveway. None of the witnesses saw the truck strike the child. After the accident he was taken to the hospital and was dead upon arrival.
The principal factual dispute concerned the exact point in the driveway at which Jason Shane was struck by the truck. Mrs. Russell stated she felt a bump only two or three feet after she put her truck in motion. Mr. Welborne, Mr. Barrett, and Mr. Brown testified that Jason Shane’s body was found approximately 28 feet west of where the front of the pickup was parked prior to the accident, according to measurements they made the morning of the trial, which was held almost 32 months after the accident.
Although Mrs. Russell did not recall seeing the child before the accident, the preponderance of the evidence shows that while she and Mr. Welborne were conversing Jason Shane walked out the front of the welding shop, entered the garage through its front door, picked up a wrench, and returned into the welding shop. In doing so the child passed very near Mrs. Russell. Therefore, we conclude Mrs. Russell should have seen the child and should have been aware of his presence in the area. However, the evidence also clearly reflects that when Mrs. Russell turned to walk back to her truck that Jason Shane was still inside Mr. Brown’s welding shop.
Mr. Welborne, Jason Shane’s father, testified:
“Q. You heard the bump [caused by the truck striking the child] ?
“A. Yeah, Lonnie [Mr. Brown] had told him to go to the house because • he was fixing to weld.
“Q. Now you heard Lonnie tell Shane to go to the house ?
“A. That was before .
“Q. Before you heard the bump ?
“A. Before I heered the bump.
“Q. Then after Shane had come between you and her .
“A. He went back to the welding shop.
“Q. And then that is when you heard Lonnie telling him ?
“A. Yeah and she had already got back in the truck. (Tr. pp. 131-132) (Emphasis added)
% if* ‡ íjc ‡
“Q. Did you see Mrs. Russell get in the car and start off?
“A. No, sir I saw Mrs. Russell when she went back to get into her truck.
“Q. Well what did you do about Jason if you knew that he was out there in front of the truck ?
“A/ After he walked to my shop, he turned around and come between us and walked back to Mr. Brown’s shop.
“Q. He turned around between you and went back to Mr. Brown’s shop?
“A. He come out to my shop and come between me and Mrs. Russell, went back to Lonnie’s shop.
“Q. Did you do anything else to check his whereabouts before the truck drove off?
“A. What else could I do ?
“Q. You could have found out where he was?
“A. I knew where he was at, he was over in the welding shop, because I could hear him over there hammering with a wrench.” (Tr. pp. 138— 139) (Emphasis added)
*686 The evidence is undisputed that Mrs. Russell started the motor and drove forward at a normal speed immediately after she got into the truck. Since the child was in the welding shop hammering with a wrench and being told to go home by Mr. Brown at the same time Mrs. Russell was in the truck starting the motor and preparing to drive off, it is unlikely that he could have gotten out of the shop, into the driveway, and 28 feet west of the spot where Mrs. Russell’s truck was parked, before being struck by the truck. The trial judge specifically stated he could not give “too much credence to the measurements [by Messrs. Welborne, Brown and Barrett] made on the day of the trial about three years after the accident.” Messrs. Wel-borne, Brown and Barrett testified that they arrived at their measurements independently, but they were all together at the site on the morning before the trial when the measurements were made, and they arrived at almost identical measurements. Mr. Brown admitted that he had made previous statements to an insurance adjuster to the effect that Mrs. Russell had traveled only 5 to 7 feet before hitting the boy and that there was “no way” she could have seen him or could have avoided the accident. In view of the improbability inherent in the plaintiffs’ version of the accident, the great length of time which elapsed before the plaintiff and his witnesses made their measurements, and the prior inconsistent statement of Mr. Brown, we find the trial judge was correct in rejecting the measurements and in accepting Mrs. Russell’s testimony that the truck struck the child 2 or 3 feet after it started.
A preponderance of the evidence indicates that Mrs. Russell’s truck was parked less than 10 feet from the front of the garage and welding shop. The right side of the truck was turned toward the garage and welding shop and the front end of the truck was about even with the partition between them. Mr. Brown’s truck was parked 2 or 3 feet in front of the welding shop and obstructed all but roughly one-third of its open front next to the garage. The greatest distance from any point in this unobstructed front of the welding shop to the point at which we have concluded the child was probably struck was approximately 10 feet. Therefore, when Jason Shane walked or ran from the front of the welding shop he probably traveled only about 10 feet before reaching the spot where he was killed.
Under these circumstances, we find it improbable that Mrs. Russell could have seen the child approach her truck before the accident. The evidence reflects that the one-half ton pickup truck driven by Mrs. Russell was a rather large vehicle and that the windows in its cab were situated well over 3 feet above the ground level. Jason Shane was of normal size for his age and measured only 34 inches in height. The record does not conclusively disclose exactly how or when, during the slight interval of time involved, Jason Shane left the welding shop and walked or ran into the driveway. However, if he came out while Mrs. Russell was walking away from the garage and toward her truck it would not have been possible for her to see him behind her. If he emerged while she was walking along her truck’s left side before getting in, it is likely that the body of the cab of the truck would have obstructed her view of him. Because of the size and height of the truck, and Jason Shane’s small stature, we are not convinced that it was probable Mrs. Russell could have seen the child if he left the welding shop and traversed the small distance to the point of the accident even after she was reseated in the cab of her truck. Therefore, we find no negligence in Mrs. Russell’s failure to observe Jason Shane’s departure from the welding shop and his movements immediately before the accident.
Nevertheless, appellants argue that because Mrs. Russell was aware or should have been aware of the small child’s presence in the vicinity, and because she knew she could not see the area of driveway immediately in front and to the right side of *687 her truck, it was negligence for her to start the truck without determining if the child had ventured into this zone of danger.
However, jurisprudence has been established, in similar cases, to the effect that, when a motorist has seen a small child in the company of another competent adult or older person and in a position of safety immediately before the motorist has reentered his vehicle, the motorist is not required to inspect the areas of blindness around his vehicle before making a timely departure. Brown v. Liberty Mutual Insurance Company, 234 La. 860, 101 So.2d 696 (1958); Comer v. Travelers Insurance Company, 213 La. 176, 34 So.2d 511 (1948); Cook v. Scarborough, 72 So.2d 560 (La.App.2d Cir. 1954); Compare Jackson v. State Farm Mutual Automobile Insurance Company, 32 So.2d 52 (La.App. 1st Cir. 1947).
In this case when Mrs. Russell last saw the child, or last had an opportunity to see the child, he was on his way back into the welding shop where Mr. Brown was located. At this time the child was apparently if not actually in the care of Mr. Brown or Mr. Welborne, who was standing just outside the door of his garage and a few feet from the doorway of the welding shop. When Mrs. Russell turned to go back to her truck the child was not playing in the driveway nor was he any where near the Russell truck. She did not tarry but returned to her truck and sought to depart without any delay. The evidence does npt demonstrate to a degree of probability that the child was ever within Mrs. Russell’s range of sight after the child walked into the welding shop and Mrs. Russell turned to go back to her truck. Therefore, we find that she had the right to assume that the child was in a place of safety and that she could set her truck in motion. She was further justified, as a reasonable person, in assuming that if the child’s position changed to a more perilous one, Mr. Brown or Mr. Welborne either would restrain the child or warn her, and that since she had not been warned, it was safe for her to start up the truck. Consequently, having no actual knowledge of the child’s dangerous position in the vicinity of the truck, she used all of the care that could have been expected of an ordinarily prudent person.
The trial judge in a scholarly and well written opinion reached the conclusion that, as tragic as the accident was, the court could not conscientiously find actionable fault on the part of Mrs. Russell. We agree with his opinion and conclusions. Therefore, the judgment of the District Court is affirmed, and the costs of the appeal will be assessed to the appellants.