HOOD, Judge.
Terreitte Messick claims damages for personal injuries sustained by him when his son, Ivy Messick, accidently backed a cattle trailer over him. The defendant is State Farm' Mutual Automobile Insurance Company, the liability insurer of young Messick. The trial judge rendered judgment in favor of defendant. Plaintiff appealed.
The questions presented are whether Ivy Messick was negligent, whether plaintiff was guilty of contributory negligence, and whether defendant’s insured had the last clear chance to avoid the accident.
The accident occurred about 5:00 P.M. on November 8, 1972, on plaintiff’s farm, in Natchitoches Parish. Ivy Messick lived near his father, and he owned some cattle which he kept on a part of the latter’s farm. He had attended a cattle auction that day, and after returning home he drove his pickup truck, towing an empty cattle trailer, from the dirt public road onto his father’s farm property, his purpose being to feed some of his calves. He parked the truck-trailer combination at an angle in front of plaintiff’s dairy barn, with the front of the truck facing the door of the barn. Ivy then got out of the truck and went into the barn to take care of his stock.
While the younger Messick was in the barn, his father, plaintiff in this suit, returned to his home which was located about 70 yards west of the barn. He saw his son’s truck and trailer parked in the barnyard, and he noticed that something was “hanging down” under the rear part *330 of the trailer. He thereupon walked from his home to the place where the vehicles were parked, and he crawled under the trailer to see what was hanging under it. While plaintiff was lying on the ground, under the rear part of the trailer, Ivy completed his chores, returned to his truck, started the motor and began backing the truck and trailer so that he could turn around and drive on to his own home, which was located about 200 yards east of the barn. The two right wheels of the trailer rolled over plaintiff’s chest as the vehicles were being backed up, and as a result of that accident plaintiff sustained the injuries for which he now seeks to recover damages.
The trailer was a large, goose-necked, four wheeled, tandem trailer, about six feet wide and twenty feet long. The two tandem wheels on each side of it were located close to each other. When the accident occurred, Mr. Messick was lying on his back immediately behind the two right wheels of the trailer. His head, shoulders and chest were under the bed of that vehicle, and the rest of his body, from his waist to his feet, protruded out from the right side of the trailer, behind the wheels and near the rear of that vehicle. Plaintiff testified that when he approached the vehicles and crawled under the trailer he assumed that Ivy was in the barn feeding his stock as he usually did that time of day, and that he did not see Ivy or inform him of his presence around the truck. He stated “he didn’t know I was there.” Mr. Messick did not hear Ivy get into the truck, he did not hear the door slam, and he did not hear the motor of that vehicle start. The first knowledge he had of the fact that the truck was being moved was when the wheels of the trailer began to push him. He stated that he hollered at Ivy when the trailer began to move, and that he could not get out from under the trailer before the right wheels rolled over him.
Ivy testified that he did not see or hear his father at any time before the accident occurred, that usually no one else is around when he feeds his calves, and that he did not know that his father or anyone else was in that vicinity when he started to back up his truck. He stated that he felt some resistance when he started to move the vehicles, but that he thought the trailer wheels were rolling over a piece of pipe which he knew was in that immediate area of the barnyard, and he accelerated his truck slightly and continued to back up over the obstruction. He discovered that it was his father after the trailer wheels had rolled over him.
When Ivy left the barn to return to his truck, he walked straight from the exit of the barn toward the front of the truck, then turned to his right and walked around to the door on the driver’s side (the left side of the truck) and he got into the vehicle at that point. That was the shortest route and the normal way for him to approach and get into the truck after he left the barn. He did not go to the right side of the truck at any time after leaving the barn, and there was no apparent reason for him to do so. The truck was equipped with two rear view mirrors, one on the driver’s side and the other on the right, or passenger, side of the vehicle. Ivy looked in both of these rear view mirrors before he started backing up his truck, but he stated that he merely glanced in them to assure himself that no vehicle had driven up behind him. He conceded, upon being questioned by plaintiff’s counsel, that if he had “really looked” and “really viewed” into the mirror on the right side, he would have been able to have seen his father’s legs protruding from the right side of and near the rear of the trailer.
The trial judge found that defendant’s insured, Ivy Messick, was free from negligence, and that the sole proximate cause of the accident was the negligence of plaintiff in placing himself in a position of peril under the trailer without advising his son of his presence there.
A motorist is not an insurer of the safety of persons who may be in or *331 around his vehicle. It is not negligence to back a vehicle, but in doing so the driver is charged with the duty of exercising ordinary care to see that the maneuver will not injure the person or property of others. Whether or not fault exists depends upon the facts and circumstances of each particular case, and the manner in which a reasonably prudent man would have acted under the same facts and circumstances is the test used in determining fault. Barnes v. State Farm Mutual Automobile Insurance Co., 229 So.2d 440 (La.App. 3 Cir. 1969); Brown v. Liberty Mutual Insurance Co., 234 La. 860, 101 So.2d 696 (1958); Bloodworth v. Hutchinson, 150 So.2d 877 (La.App. 4 Cir. 1963); George v. Shreveport Transit Co., 136 So.2d 711 (La.App. 2 Cir. 1962); Schmeltzer v. New York Fire & M. Underwriters, Inc., 215 So.2d 133 (La.App. 3 Cir. 1968).
The accident in the instant suit occurred in a rural area, on private property, not on a public road or street. Ivy had no reason to suspect that his father or anyone else was in that vicinity, as he backed his truck from its position in front of the barn, and he certainly had no reason to suspect that someone would come up during the few minutes he was there and crawl partially under the trailer, without making his presence known to him. There were no children in that area, and Ivy was aware of that fact. He fed his cattle regularly at that place, and he stated that most of the time he was there by himself and that he seldom saw anyone while he performed that chore. He could not see his father approach, since Ivy was in the barn when Mr. Messick walked up to the trailer, and there were no other vehicles in that area indicating to defendant’s insured that someone had driven up to that area. Ivy glanced in his rear view mirror and ascertained that no vehicle was behind him before he proceeded to move his truck.
We agree with the trial judge that defendant’s insured, Ivy Messick, exercised the degree of care required by law before he proceeded to back his truck-trailer combination. We find, contrary to plaintiff’s argument, that he was not negligent in having failed to walk around or inspect the right side of his trailer before he got into the truck, or in having failed to look more carefully through the rear view mirror and in that manner detect that plaintiff was partially under the trailer before he moved the vehicles.
Our conclusion is that defendant’s insured was free from negligence, and that defendant thus is not liable for the damages sustained by plaintiff. Having reached that conclusion, it is unnecessary for us to consider the issues of whether plaintiff also was negligent, or whether defendant had the last clear chance to avoid the accident.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.