SARTAIN, Judge.
The accident giving rise to this litigation occurred on April 19, 1973, when plaintiff’s minor child, Joel William Tucker, age five, was struck by a vehicle owned and operated by the defendant, Jimmie R. Knight. The trial court entered judgment in favor of the plaintiff in the amount of $1,735.75 for special damages and $7,500.00 for the injuries sustained by young Tucker. It is from this judgment that defendant has appealed. We affirm.
The accident itself occurred at the intersection of Alliquipa and Mohican Streets in the City of Baton Rouge, Louisiana. The weather was clear and the streets were dry. Mohican Street is a four lane major thoroughfare, consisting of two lanes for east bound traffic and two lanes for west bound traffic. On the south it is bordered by a neutral ground approximately two to three feet in width and is further paralleled by a sidewalk.
Knight was traveling on the outside east bound lane of traffic. Immediately prior to the accident young Tucker was walking, then running in an easterly direction on the sidewalk on the south side of Mohican Street. He veered sharply to his left with the intention of crossing Mohican Street. As he did so he ran into the right front fender of the Knight vehicle just as he stepped into the street. The point of impact was fixed two feet north of the south curb of Mohican Street a distance of twenty-six feet from the west parallel line of Alliquipa Street.
The evidence indicates that shortly prior to the accident young Tucker was accompanying his cousin, Scotty Fontenot. They had just left their grandmother’s home and *1227 were going to a grocery store situated near the northwest corner of Mohican and Alli-quipa Streets. Their grandmother’s home is located some three and one-half blocks west and south of Mohican Street. The various versions of the witnesses who testified are generally uniform except that the position of Scotty Fontenot at the time of the accident appears to pose a conflict.
Knight testified that he was proceeding in an easterly direction in the outside lane of Mohican Street at a speed of between 35 and 40 m.p.h. He stated on direct examination that the first time he observed young Tucker was when the latter immediately ran from the sidewalk in a “cater-cornered direction” into his (Knight) lane of traffic, striking his vehicle’s right front fender. He stated that he could do nothing to avoid the accident save to immediately apply his brakes when he first discerned the presence and movement of the child. This testimony is in marked contrast to that given by him when he was first called under cross examination by plaintiff’s attorney. At that time Knight stated that as he was proceeding in an easterly direction on Mohican he first observed two youths on the sidewalk, when the younger of the two broke away from the older, ran a few feet and then cut directly into his path of travel. On direct examination he confirmed the fact that his first observation of the youth was just immediately prior to the accident and right at the south curb where the impact occurred. He could not recall the presence or location of the Fontenot lad.
The police report which was introduced in evidence by stipulation in lieu of the testimony of the officer indicates that the Knight vehicle left fifty-seven feet of skid-marks, eight of which were beyond the point of impact. The stated speed limit for Mohican Street at this point is 40 m.p.h.
Maude Jackson resides at her home on the north side of Mohican Street. She stated that on the morning of the accident she was in her yard and observed two youths proceeding in an easterly direction on the sidewalk on the south side of Mohican, the older youth (Fontenot) was holding the younger’s (Tucker) hand. “They were just walking at first and the little boy started running. He pulled from the older boy’s hand and just as he ran down the sidewalk he ran for a little distance, then cut across in the street. I yelled, but it was too late because this car was right up on him. Now, if I had seen the car maybe I could have yelled louder, but you cannot see around my house from my carport because my house sits out a distance from the carport and I have two cedar trees on either side of the steps.” She estimated that young Tucker stepped off of the curb and into the street at a point approximately fifteen feet from and west of the corner. Her testimony adds very little to the position of Fontenot after he and Tucker separated, that is, at what point in the scheme of things did Fontenot cross Mohican Street.
Scotty Fontenot testified that as he and Tucker were walking along the sidewalk he was holding Tucker’s hand when Tucker pulled away from him and started running. When this occurred Fontenot crossed Mohican and after he had done so he turned around only to see that his young cousin had come into contact with the Knight vehicle. His testimony is positive to the effect that he had crossed Mohican Street immediately prior to the accident. If this be the case, then he had to cross Mohican Street within Knight’s vision. From a factual point of view we find that under either version of the accident, namely: (1) both youths remained on the south side of Mohican Street, or (2) Tucker continued running along the south side of Mohican Street and Fontenot crossed the street instantly after Tucker broke away from him, that Knight should have observed the presence of these young boys and taken such steps as their conduct dictated. We believe that the record supports the conclusion that Fonten-ot had in fact already proceeded across Mohican Street at a time that Tucker was still running along the sidewalk.
Accordingly, we find the facts to be as follows: Knight was traveling 25-30 m.p.h. in an easterly direction on the outside lane of Mohican Street. Young Tucker *1228 and Fontenot were walking in an easterly direction on the sidewalk on the south side of Mohican Street. They had done so for approximately a block. Tucker broke away from Fontenot and started to run. Fonten-ot then crossed Mohican Street. Just before Tucker reached the corner he veered sharply to his left and as he ran onto Mohican Street he collided with the right front fender of Knight’s vehicle. As there was another car traveling east on the inside lane of Mohican Street and alongside of Knight, the latter could not cut to his left. Knight applied his brakes and left 49 feet of skid-marks prior to impact. There were no cars preceding Knight nor were there any cars parked on Mohican Street. Knight had a clear unimpeded view ahead of him for a full block. He (Knight) did not see either of the youths until Tucker was about to step from the curb. He did not see the Fontenot lad at all, much less observe him cross the street in front of him.
In fixing Knight’s liability, it must be determined whether the conduct complained of was negligent, that is, whether there was a duty owed by him to the child, the scope of such duty, if this duty was breached, and the causal relation between the child’s injuries and the alleged negligent conduct. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); and Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970). Our jurisprudence is well settled to the effect that a motorist who sees or should see children near the roadway must exercise a high degree of care in view of the propensity of young children to do the unexpected, dart into the street or to take sudden and perilous action, heedless of their own safety and well being. Pea v. Smith, 224 So.2d 37 (1st La.App., 1969); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); and Cheramie v. Great American Insurance Co., 198 So.2d 726 (1st La.App., 1967). However, a motorist is not an insurer of the safety of children. The high degree of care he is required to exercise in their presence is not exacted of him until he either sees or by the exercise of reasonable care should have seen the presence of small children. He is exonerated from liability in the typical dart and run case where a child suddenly appears from behind an obstacle that has blocked his view. Duraso v. Barbo, 215 So.2d 908 (1st La.App., 1968). Each case must be resolved on the facts peculiar to it. The scope of the duty is much broader than that owed to an adult or older person. Where a small child is involved a driver is to expect the unexpected. This is so because a child of tender years does not possess the judgment and maturity expected of older persons.
In the instant case, it is apparent that Knight was not exercising that degree of care imposed upon him by law. He had a clear and unhindered view and should have seen these two youths on the sidewalk just several feet from the street itself for at least the distance of a block away. This failure to observe their presence was a breach of the duty he owed under these circumstances.
Defendant argues that plaintiff has failed to bear the burden of proving when the presence of these children should have been known to him and showing further that he thereafter breached his duty toward them. He argues (by applying reasonable reaction time) he acted as quickly as he could and was just eight feet short of avert-: ing the accident. Defendant is indicted by his own testimony because he did nothing until he saw young Tucker about to step into the street in front of him. We are satisfied, as was the trial judge, that plaintiff has borne her burden of proof. The children were there. They did not step from behind another object. For the defendant to argue that he looked and did not see them when they were in fact there is equivalent to saying that he did not look at all. His lack of attention and observation is apparent.
The question of quantum has not been raised.
Accordingly, for the above reasons, the judgment of the district court is affirmed at appellant’s costs.
AFFIRMED.