597 So.2d 1070 (1992)
Odell SNEED and Wallace Sneed, Plaintiffs-Appellants,
v.
Virginia H. SATCHER and State Farm Mutual Auto Insurance Company, et al., Defendants-Appellees.
No. 23438-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
*1071 Goff, Caskey, Davis & Fallin by H. Russell Davis, Arcadia, Russell A. Woodard, Ruston, for plaintiffs-appellants.
Hayes, Harkey, Smith, Cascio & Mullens by Charles S. Smith, Monroe, for defendants-appellees.
Before NORRIS, VICTORY and STEWART, JJ.
NORRIS, Judge.
Plaintiffs Odell and Wallace Sneed appeal a jury verdict finding that defendant Virginia H. Satcher was not liable for the death of the Sneeds' young son. For the reasons expressed, we affirm.

FACTS
On the evening of August 21, 1987, a wake was held for Wallace Sneed's mother at the Simmons Funeral Home in Jonesboro, Louisiana. Mrs. Sneed and her husband, Odell, attended the wake with their two young sons, Princeton (aged four), Kelvin Terrell (aged 19 months), and various other family members. Virginia Satcher also attended.
The Simmons Funeral Home is located on East Walton street in a predominantly residential area. A straight concrete driveway leads from the street to a carport on the *1072 right side of the funeral home. There are several pine trees in the front yard. To the left of the funeral home is the Simmonses' private residence, which has a horseshoe-shaped dirt and gravel driveway in front. Part of this driveway is adjacent to the funeral home's front yard. A small ditch runs along East Walton street in front of the funeral home. Because parking space is limited in front of the funeral home, visitors have traditionally parked in the horseshoe driveway in front of the residence. We include as an appendix a surveyor's diagram, introduced at trial as Exhibit P-1, showing the layout of the two lots.[1]
On the evening in question, the Sneeds parked their car in the funeral home yard, close to the ditch and street, with its front end slightly angled toward the trees. Virginia Satcher's car was the last one parked in the horseshoe drive next door; her car was in the portion of the drive closest to the funeral home yard and was roughly perpendicular to the street.
After the wake, Mr. Sneed took the children outside while his wife finished making preparations for her mother's funeral. He began visiting with his brother and sister-in-law while his sons played with their cousins in the grassy area around the pine trees near the passenger side of the Sneeds' car.
As Virginia Satcher left the funeral home, she spoke with several people standing near the trees in the front yard. She testified at trial that she then walked around the front of her car and prepared to leave. As soon as she started backing out of her parking place, she heard people shouting at her and stopped her car. However, her vehicle had already struck and run over Terrell, who was playing in the gravel behind her car. The child died at the Jackson Parish Hospital later that same evening.
Mr. and Mrs. Sneed sued Mrs. Satcher and her insurer, State Farm Mutual Auto Ins. Co., along with Herbert and Mary Simmons and their insurers. The Sneeds settled with the Simmonses on the eve of trial. Mrs. Satcher and State Farm reconvened against Odell Sneed, alleging that his failure to supervise Terrell properly was the sole cause of the child's death.
After trial, the jury returned a unanimous verdict finding Mrs. Satcher not guilty of "fault or negligence which was a cause-in-fact of the death of Kelvin Terrell Sneed and which violated a duty owed by Mrs. Satcher to the plaintiffs, Odell Sneed and Wallace Sneed[.]"
The Sneeds appeal the judgment reflecting this verdict, urging in four assignments of error that Terrell's death was due to the breach of a duty owed by Mrs. Satcher, and that the trial court erred both in allowing defense counsel to lead his own witness on cross-examination, and in its choice of jury instructions.

DISCUSSION: JURY INSTRUCTIONS
We first address the Sneeds' third and fourth assignments, in which they challenge the instructions given to the jury. The trial court declined to give the following instructions requested by plaintiffs:
25) Backing a vehicle without knowing whether it can safely be done is grossly negligent. Turner v. N.O.P.S.I., 476 So.2d 800 (La.1985).
28) In backing a vehicle, a driver is charged with a duty of exercising care to see that the maneuver will not injure others. Messick v. State Farm Mutual Automobile Ins. Co., 306 So.2d 328 (La. App.3rd Cir.), writ denied 309 So.2d 684 ([La.] 1975).[2]
31) The fact that a parent does not continuously watch her child is not to be considered sub-standard conduct so as to permit a negligent party to escape liability. Brown v. Sears Roebuck [&] Co., 503 So.2d 1122 (La.App.3d Cir.), affirmed 514 So.2d 439 ([La.]1987).
34) The motorist owes a high degree of care in the presence of children that the *1073 motorist either sees or should have seen. Ford v. Knight, 337 So.2d 1225 (La.App. 1st Cir.1976).
The Sneeds further urge that the court erred in giving two of Mrs. Satcher's requested instructions:
14) Unless a motorist knows or has reason to know that a child is in the vicinity of a street, his duty is to use ordinary care and caution in the operation of his vehicle. Keel v. Thompson, 392 So.2d 713 (La.App. 3rd Cir.1980).
16) Drivers are not insurers of safety of young pedestrians and if it is shown that the driver is unable to see the children until it is too late to avoid the accident, then the driver cannot be held liable. Chappetta v. Jones, 237 So.2d 435 (La. App. 4th Cir.1970).
The court gave the following instructions on the duty of a motorist backing a vehicle:
The driver of the vehicle is negligent in backing his vehicle without keeping a proper lookout, or ascertaining that his path is clear.... Backing an automobile is considered a dangerous maneuver, and the law imposes a high duty of care upon the driver attempting it. R. p. 554.
Regarding the standard of care imposed on a motorist in the presence of children, the court instructed the jury as follows:
If a motorist has no reason to anticipate children near his automobile he is not negligent merely because a child was struck by it ... Unless a motorist knows or has reason to know that a child is in the vicinity of a street, his duty is to use ordinary care and caution in the operation of his vehicle. It's only when the child's presence is known to the motorist, or should have been known, that a higher degree of care toward the child becomes operative. Drivers are not insurers of safety of young pedestrians, and if it's shown that the driver is unable to see the children until it is too late to avoid the accident, then the driver cannot be held liable. R. pp. 554, 556-67.
The court's instruction as to parental duty read as follows:
Parents of small children are required only to use reasonable precautions. Their conduct is not negligent if, by a common sense test, it is in accord with that of a reasonable, prudent parent faced with similar conditions and circumstances. Failure to take every precaution against every foreseeable risk, or to use extraordinary skill, caution, and foresight in supervising one's children does not constitute negligence ... Under Louisiana law, parents are required to properly supervise and protect their children. The duty of parents to protect their small children is measured by a standard of what a reasonable parent would do under the same or similar circumstances. R. pp. 554, 556.
Adequate jury instructions are those that fairly and reasonably point up the issues and provide correct principles of law for the jury to apply to those issues. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Fuller v. United States Aircraft Ins. Group, 530 So.2d 1282 (La. App.2d Cir.), writ denied 534 So.2d 444 (La.1988), cert. denied 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989), and citations therein. The trial judge is not required to give the precise instructions submitted by the litigants; he need only give instructions that properly reflect the applicable law and adequately convey the issues to the jury. Id. Even if the requested instructions are fair statements of the law, the trial judge need not include them verbatim but must strike a fair balance so that no one issue is unduly emphasized. Id.
The Sneeds argue that defendants' requested charge #14 was inappropriate because the case from which it was taken did not involve a backing maneuver and imposed only an ordinary standard of care. However, the charge is a valid statement of law and its use does not constitute abuse of the trial court's discretion. We note, moreover, that plaintiffs' requested instruction #28 is drawn from a case which imposed a standard of ordinary care on a backing motorist. See Messick v. State Farm, supra.
*1074 The Sneeds further contend that defendants' requested charge #16 was inapplicable because Chappetta, from which it was derived, was not a "backing" case. However, the court's instructions on the duty of motorists in the presence of children were largely derived from Barnes v. State Farm Mutual Auto. Ins. Co., 229 So.2d 440 (La.App. 3rd Cir.1969), which does involve a backing motorist. Moreover, contrary to the Sneeds' contention that Mrs. Satcher "definitely had reason to know that children were in the vicinity," it was the obligation of the jury to reconcile the conflicting evidence presented on this issue.
Regardless of the precise source or sources of the court's instructions, both of the challenged charges were accurate statements of the law and were applicable to the facts of this case. The instructions emphasized that the backing maneuver is a dangerous one, and that a driver must exercise more than ordinary care when he knows or should know that children are present.
We agree with defendants' contention that the validity of the court's instructions regarding the standard of parental care is immaterial as the jury did not reach the issue of Odell Sneed's conduct. We note, however, that the court's instruction on this issue tracked the meaning, if not the precise language, of plaintiffs' requested instruction #31; the court's instruction was arguably more favorable to the plaintiffs than their own requested instruction.
We find that the trial court's instructions, taken as a whole, fairly pointed up the issues and provided the jury with correct principles of law. Assignments three and four are without merit.

MANIFEST ERROR
The Sneeds' first assignment challenges the jury's finding that Mrs. Satcher was not liable for the death of their son.
A court of appeal may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong, and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989); Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App.2d Cir.), writ denied 573 So.2d 1135 (La.1991). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.
The Sneeds first contend that this jury verdict is not entitled to the customary deference because the jury was given incorrect instructions. Thomas v. Missouri Pacific R.R. Co., 466 So.2d 1280 (La.1985). Because the instructions given were appropriate, the jury's verdict is subject to the manifest error rule.
During examination by plaintiffs' counsel, Mrs. Satcher testified that the wake had already begun when she arrived at Simmons Funeral Home. She parked her car behind others already located in the horseshoe driveway of the Simmonses' residence. While she could not say precisely how far the back of her car was from the road, she stated definitely that there was not enough space behind her for another car to park. She left her car and proceeded into the funeral home.
Mrs. Satcher testified that she saw children playing inside the funeral home, but did not remember seeing any children outside. Plaintiffs' counsel then introduced portions of Mrs. Satcher's earlier deposition testimony in which she first suggested that she had seen children playing both inside and outside the home, but then clarified that she had seen children only inside during the wake.
Continuing her testimony at trial, Mrs. Satcher stated:
A. I did not see children. They could have been there, but when I got there, there were people on the outside and I didn't know whether there were children. I mean I didn't think about it being children or adults. There wereI know there were a lot *1075 of people on the outside ... I did not see children outside. R. p. 422.

* * * * * *
Q. Now, did you see any children running and playing that day, that night?
A. On the inside of the funeral home. R. p. 424.
Mrs. Satcher then testified that she came out of the funeral home after the wake, spoke with several people standing in the area around the trees, and then came around the front of her car. She explained that she could not go behind her car to get to the driver's side because the car was too close to the ditch, but that as she finished talking to the people in the funeral home yard and walked toward her car, she could see that no one was behind it. Then, immediately before she got behind the wheel, she observed that the path behind her car appeared to be clear. Other cars were still parked in front of hers in the horseshoe driveway, so driving forward was impossible.
While questioning Mrs. Satcher, plaintiffs' counsel referred to a portion of the police report taken at the accident scene to the effect that she had paused for "approximately one minute" to speak to someone. Mrs. Satcher denied talking to anyone for more than an instant after she passed in front of her car. She explained that, before getting into her car, she told Clinette Sampson, a member of Mrs. Sneed's family who had attended the wake and was seated in a vehicle on the driver's side of Mrs. Satcher's car, that she would "see her tomorrow."
Other than the officer's comment in the police report, there is no evidence to suggest that Mrs. Satcher lingered after she walked in front of her car. She testified that after speaking very briefly to Ms. Sampson, she unlocked her car door and Byron Sampson, another member of the bereaved family, opened it for her. She got in the car, put on her seatbelt, started the engine, and then looked in her rearview mirror and over her left shoulder; she observed no obstructions. She then began to back up slowly with her foot on the brake. She could not say exactly how far her car had gone when she heard people shouting, but stated that she had "just started, barely backed up." R. p. 431. She hit the brake immediately when she heard shouting, because she thought she might be about to back into the ditch.
The Sneeds argue that more was required of Mrs. Satcher under the circumstances presented here than merely looking into her rearview mirror and over her left shoulder before she began to back her car. They cite Turner v. N.O.P.S.I., supra, which states:
Backing a truck without knowing whether it can be safely done is grossly negligent... If the driver of a backing vehicle could reasonably have avoided the accident, he is responsible for injuries caused when he strikes a pedestrian in his path. 476 So.2d at 802 (citations omitted).
The Sneeds urge that Terrell's death could have been avoided if Mrs. Satcher had walked behind her car immediately prior to backing out or asked one of the people standing close by if her pathway was clear. They claim that she had this duty because she knew or should have known that children were in the vicinity. They further contend Mrs. Satcher's thought that she was about to back into the ditch when she heard people yelling at her is an admission that she failed to ascertain that her backing maneuver could be made safely.
The details of the accident, however, are not as clear as the Sneeds suggest. There was conflicting testimony as to exactly when the child moved to the gravel driveway behind the car. Sharon Sneed, plaintiffs' sister-in-law, testified that she had seen Terrell in the grassy area around the trees where the other children were playing in the "seconds or moments" before the accident occurred. R. p. 354. On cross examination, she testified that Terrell could not have been behind the car but a few seconds. R. p. 369. She denied that the children had been allowed to wander over to the gravel driveway prior to the accident. R. p. 366. Odell Sneed testified, *1076 however, that he had seen the child playing in the gravel around Mrs. Satcher's car for an unspecified period of time; he did not feel the child was in danger because no one was leaving at that time. Nevertheless, on cross, defense counsel read portions of Mr. Sneed's earlier deposition testimony to the effect that Terrell had walked to the car "in just a second[.]" R. p. 406. Willie Sneed, Odell Sneed's father, testified that Terrell was a very active little boy who could move quickly for a child his age. R. pp. 463-64, 468. The record thus supports the inference that Terrell was behind Mrs. Satcher's car for only a very brief period.
The Sneeds concede that Mrs. Satcher could not see the small child in her rearview mirror, because he was squatting in the gravel behind her right rear bumper. It is true, as the Sneeds contend, that if she had looked over her right shoulder she might have seen other children playing in the yard next door, but she still could not have seen Terrell. Furthermore, even if the jury concluded that Mrs. Satcher should have known children were present, it could nevertheless find that Mrs. Satcher could reasonably rely on the adults watching the children to keep them out of harm's way or to give her timely warning of danger. The court in Brown v. Liberty Mutual Insurance Co., 234 La. 860, 101 So.2d 696 (1958), reached this conclusion, and Barnes v. State Farm, supra, applied the principle to facts similar to the instant case:
[W]hen children are accompanied by their parents or other adults, the degree of care diminishes because it is only reasonable for a prudent person to assume, in the absence of any indication to the contrary, that the parent or other person will guard against childish impulse and give immediate warning of any sudden change in position which might place the child in peril.
This court has adopted a similar approach:
[W]hen a motorist has seen a small child in the company of another competent adult or older person and in a position of safety immediately before the motorist has reentered his vehicle, the motorist is not required to inspect the areas of blindness around his vehicle before making a timely departure. Welborne v. Southern Farm Bureau Ins., 305 So.2d 684 (La.App.2d Cir.1974), writ denied 309 So.2d 352 (La.1975) (citations omitted).
The trial court did not instruct the jury as to the duty of a motorist when children are present yet under the supervision of competent adults; the jury would nevertheless have been justified in applying the common-sense principle expressed in Brown, Barnes, and Welborne in assessing the reasonableness of Mrs. Satcher's conduct. In any event, under the circumstances of the instant case, the jury was not clearly wrong in concluding that she was not required to walk around the car and check under the rear bumper or to ask someone else to check for her.
Finally, Mrs. Satcher's first thought that bystanders were shouting at her because she was about to back into the ditch does not, as the Sneeds suggest, prove that she did not know what was behind her and thus had not ascertained she could back up safely. Obviously, if she had known the child was behind her she would not have moved her car. However, she saw that her path was clear when she approached the car from the right side and then came around to the left; hearing people then shout at her, she naturally assumed the problem was the ditch, which was the only likely danger of which she was aware.
The evidence presented to this jury supports the conclusion that Mrs. Satcher saw that no one was behind her car when she walked from the funeral home yard to the driver's side car door, that very little time elapsed before she began her backing maneuver, and that Terrell got behind the car's right bumper during this short time. The jury could find, therefore, that she acted in a reasonable and prudent manner under the circumstances and thus violated no duty owed to plaintiffs. The Sneeds' first assignment is without merit.

LEADING QUESTIONS
By their second assignment, the Sneeds contend that the trial court erred in allowing *1077 defense counsel to ask Mrs. Satcher leading questions when he examined her after plaintiffs had called her as an adverse witness.
In reviewing an alleged procedural error, an appeal court must consider (1) whether the particular ruling complained of was in error and, if so, (2) whether the error harmed or prejudiced the complainant's cause; reversal is not warranted unless the party alleging error shows that the error, when compared to the record in its totality, had a substantial effect on the outcome of the case. Neumeyer v. Terral, 478 So.2d 1281 (La.App. 5th Cir.1985), writ denied 481 So.2d 631 (La.1986), and citations therein.
Louisiana Code of Evidence art. 611 C provides in pertinent part:

Leading questions. Generally, leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony[.]... [T]he court ordinarily shall prohibit counsel for a party from using leading questions when that party or a person identified with him is examined by his counsel, even when the party or a person identified with him has been called as a witness by another party and tendered for cross examination.
Mrs. Satcher was first called as an adverse witness by the plaintiffs. Later, her attorney asked her, for example, "Could you see the rear of your automobile as it was parked in the driveway?" and plaintiffs' counsel objected to the leading question. The court overruled the objection, ruling that Mrs. Satcher was "under cross at this point." R. p. 436. This is incorrect; Mrs. Satcher was on cross when the plaintiffs called her as an adverse witness. She was not "tendered for cross examination," and questioning by one's own attorney is direct examination. No unusual circumstances were present, thus art. 611's prohibition against leading questions was in place. The court's ruling was in error.
However, we find that this error had no substantial effect on the outcome of the case and does not warrant reversal. The questions Mrs. Satcher's counsel asked of her were mere clarifications of the testimony she had given moments before on cross by plaintiffs' counsel. Moreover, defense counsel's questions were not overly suggestive, nor did they dictate the specific response expected of the witness. The substance of Mrs. Satcher's responses to her attorney's questions did not vary from those she had given on cross, nor did defense counsel address any issues not already covered. This assignment is without merit.

CONCLUSION
As we find neither abuse of the jury's discretion nor trial court error having a substantial effect on the outcome of the case, we affirm the judgment of the trial court. Costs of this appeal are assessed against Odell and Wallace Sneed.
AFFIRMED.
*1078 
NOTES
[1] Certain extraneous markings and figures have been deleted from the diagram.
[2] Plaintiffs erroneously cited Marshall v. Armand, 306 So.2d 331 (La.App. 3rd Cir.1975) as authority for this statement of law.