722 So.2d 386 (1998)
Thomas L. and Jane B. SANDERS, Plaintiffs-Appellants,
v.
Barbara BAIN and Liberty Mutual Insurance Company, Defendants-Appellees.
No. 31,362-CA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
*387 Nancy Fox Reiter, Counsel for Appellants.
Mayer, Smith & Roberts by David F. Butterfield, Shreveport, Counsel for Appellees.
Before HIGHTOWER, GASKINS and CARAWAY, JJ.
HIGHTOWER, Judge.
Plaintiff spouses appeal the jury's rejection of their various claims stemming from injuries the husband received when he fell from defendant's roof. We affirm.

*388 Facts and Procedural History

Thomas Sanders, an experienced master plumber engaging in full-time work through his union association and offering his services to private customers on the side, arrived at the home of Barbara Bain in the late afternoon of October 17, 1994, to unstop her kitchen sink drain line. Finding no clean-out under the house, Sanders concluded that the easiest and most economical way to effect the repair would be through the roof vent. Because rains had saturated the ground, the plumber decided the best placement for his ladder would be on the uncovered front porch. Utilizing the nail support of the gutter system for what he thought would be additional stability, Sanders leaned his ladder against the house at the front door.
Before going onto the roof, Sanders checked the stability of his ladder by climbing to the second rung and testing whether the gutter flexed within normal limits. With an extension cord in hand, he then made his way to the roof without incident. Sanders next safely descended the ladder to obtain his sewer machine. Carrying that thirty-five-pound device, the 225-pound man then successfully scaled the ladder again. After ten to fifteen minutes of work, the plumber began another descent to check his success at unclogging the drain line. He first placed his right foot on the ladder. Then, according to Sanders, as he put his left foot down, the gutter collapsed into the fascia board causing the ladder to twist and throw him to the ground.
Seeking to recover damages for the plumber's broken ribs and punctured lung as well as his wife's loss of consortium, plaintiffs filed suit against the homeowner and her insurer, Liberty Mutual Insurance Company. Alleging that the gutters and fascia board had fallen into disrepair, the Sanderses asserted theories of both negligence and strict liability.
The jury rendered a verdict in favor of defendants, finding that Bain's residence did not contain any vice or defect causing an unreasonable risk of harm and that the plumber failed to exercise reasonable care. Plaintiffs now appeal, challenging the jury charge as well as the assessment of liability.

Jury Instructions
In their first assignment of error, plaintiffs contend that the trial court offered inadequate and confusing instructions to the jury. They particularly complain that, with certain special requested charges being excluded, the fact-trier did not receive an adequate explanation of strict liability precepts. In another assignment, appellants say the inclusion of a requested defense charge regarding negligence served to lower the homeowner's duty and increase the duty owed by the repairman.
In order for an appellate court to consider whether a trial court properly instructed the jury, La. C.C.P. art. 1793(C) clearly establishes a mandatory procedural rule for preserving an objection to the denial of a requested charge. The litigant must specifically state on the record the complaint as to each special charge refused and the grounds for each objection. DeRouen v. Audirsch, 25,847 (La.App.2d Cir.06/28/94), 639 So.2d 476; Luman v. Highlands Ins. Co., 25,445 (La.App.2d Cir.02/23/94), 632 So.2d 910; Osborne v. Ladner, 96 0863 (La.App. 1st Cir.02/14/95), 691 So.2d 1245; Petitto v. McMichael, 588 So.2d 1144 (La.App. 1st Cir. 1991), writ denied, 590 So.2d 1201 (La.1992). A blanket objection, without assigning reasons, does not comply with this codal requirement. Luman, supra; Petitto, supra.
In the present case, after the charge had been debated and finalized off the record, the trial court allowed each side time to preserve its grievances for appeal. At that occasion, plaintiffs merely objected without supplying the specifics of their position. Such a general disapproval does not properly preserve the complaint nor correctly place the issue before us.
Even so, we note no error in the trial court's rulings on the objections nor in its instructions to the jury. Adequate jury instructions, of course, are those that fairly and reasonably convey the issues and provide correct principles of applicable law. That being so, the sufficiency of a jury charge will be determined in light of the charge as a whole, and the trial judge is not required to *389 use the precise language submitted by the litigants. Rowsey v. Jones, 26,823 (La. App.2d Cir.05/10/95), 655 So.2d 560; Sneed v. Satcher, 597 So.2d 1070 (La.App. 2d Cir. 1992). Even if the requested instructions are fair statements of the law, the trial judge need not include them verbatim but may strike a fair balance so that no one issue is unduly emphasized. Sneed, supra. An appellate court must exercise great restraint by setting aside the verdict only where the instructions misled the jury to such an extent as to prevent it from doing justice. Rowsey, supra.
Having reviewed the district court's charge, we find that it correctly and thoroughly conveys the law on negligence and strict liability. The substance of plaintiffs' special requested instructions[1] are well covered (and better explained) within the given charge. And, anent plaintiffs' suggested statement that "[t]he fact that an appurtenance is defective or decayed is proven by its giving way when leaned upon," even if for sake of argument we assumed this to reflect the law correctly, substantial explanation would have been required. As presented, the instruction would be inaccurate and misleading.
Nor do we find any error in the court's inclusion of defendants' special requested charge regarding the care owed by a plaintiff in a negligence suit. After setting out the basic standard of careconduct reasonably expected from an ordinary person under the same or similar circumstances the offered charge added further clarification by stating that such care would vary according to the circumstances facing that individual. Given Bain's physical disabilities and financial circumstances, appellants maintain this instruction lowers the standard of care owed by her. Yet, despite plaintiffs' assertions to the contrary, the record contains no evidence of such a theory being presented to the jury. Indeed, the trial judge significantly limited defense questioning in this regard, allowing the presentation of only clearly relevant testimony.
These assignments of error lack merit.

Liability
When strict liability and negligence are advocated as alternate grounds of recovery in a case involving allegedly dangerous premises, the difference between the two concepts reposes in the proof that each demands. Townsend v. Westinghouse Elevator Corp., 25,966 (La.App.2d Cir.08/17/94), 641 So.2d 1022, writ denied, 94-2371 (La.11/29/94), 646 So.2d 403. Under either theory, however, in order to recover based upon contentions that the fascia board had been rotten or the gutter dangerously rusted, the Sanderses faced the burden of proving that the defendant had custody of the thing causing the injury; that the thing contained a defect, that is, a condition creating an unreasonable risk of harm; and that the defective condition caused the plaintiff's injury. See id.; Dorthlon v. St. Francis Medical Center, Inc., 28,426 (La.App.2d Cir.06/26/96), 677 So.2d 654.
Under a negligence approach, the plaintiff must additionally prove the owner or custodian knew or should have known of the defect; whereas, under strict liability, the plaintiff is relieved of that burden inasmuch as such knowledge is presumed. Townsend, *390 supra. Even under the latter concept, an owner is not responsible for all injuries resulting from any risk posed by his building; he or she is only liable for those injuries caused by an unreasonable risk. Dorthlon, supra.
Of course, the lack of an unreasonably dangerous condition implies the absence of a duty on the part of the defendant under either strict liability or negligence theories. Townsend, supra. And, the mere happening of an accident does not engender a presumption that defects are present. Spott v. Otis Elevator, 601 So.2d 1355 (La. 1992); Dorthlon, supra; Townsend, supra.
In the special verdict returned in the instant matter, the jury concluded that Bain's residence did not contain any vice or defect creating an unreasonable risk of harm. Instead, as determined by the fact-finders, Sanders failed to exercise reasonable care and his fault alone caused the accident. It is well settled that a court of appeal may not set aside a jury's factual finding in the absence of manifest error or clear wrongness. And, where there is conflict in the testimony, reasonable inferences of fact should not be disturbed upon review, even if the appellate court should feel its own evaluations and inferences are equally reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). If the jury's findings are reasonable in light of the entire record, the court of appeal may not reverse even when convinced that it would have weighed the evidence differently as the trier of fact. Id.
Plaintiffs' son testified that his inspection shortly after the accident revealed rust on the inside of the gutter. Sanders himself knew nothing of the condition of the gutter, contending only that it gave way or collapsed as he stepped onto the ladder. On the other hand, both Bain and a friend who frequented her home testified there had been no problems (leaks, etc.) with the gutters, even during rainstorms. Moreover, the insurance adjuster inspected the remaining gutters[2] and found no rust. Likewise, while plaintiffs' witnesses claimed the fascia board appeared to be rotten, defense evidence provided a different view. Indeed, when Bain had her home painted and all deteriorated or damaged fascia replaced several months after the accident, the fascia board at the site of the accident was not removed. Also, the insurance adjuster inspected the board but found no rot or decay.
Given the evidence as a whole, we cannot say that the jury erred in concluding that no unreasonably dangerous condition existed.

Conclusion
Accordingly, for the foregoing reasons, the judgment below is affirmed at appellants' costs.
AFFIRMED.
NOTES
[1] The proposed charges, omitting citations, would have read:

Strict liability arises from the mere fact of the owner's relationship with and responsibility for the thing which causes the damage. Strict liability applies when a defect is found to exist in the premises.
A landowner owes a duty to discover any unreasonably dangerous condition or use of its premises and to either correct the condition or warn of its existence. Necessary appurtenances to structures and movables made immovable by attachment, which are defective or have fallen into ruin, are included in the term "building" for purposes of La. Civ.Code art. 2322. Additionally, the owner of a building is bound to keep it and properly attached things in proper repair. The fact that an appurtenance is defective or decayed is proven by its giving way when leaned upon.
For purposes of La. Civ.Code art. 2322 strict liability, the neglect of the owner of a building to repair it constitutes the failure of the owner to keep the building in repair and no showing of negligence is required. Under La. Civ.Code art. 2322, custody is the basis of legal fault as opposed to negligence and there is an irrebuttable presumption that the owner of the thing which caused damage had knowledge of the defective condition.
[2] Unaware that suit would be filed against her, Bain disposed of the gutter at issue within a few weeks of the accident.